## State Real Estate Commission v. Campbell

*George W. Shields, Shields, Watson & Washington,* for appellant.

*Walter E. Alessandroni,* Attorney General, *Charles A. Woods,* Deputy Attorney General and *David S. Molod,* Assistant Attorney General, for appellee.

LIPSITT, J., May 9, 1966.—Mack W. Campbell, trading as Lincoln Realty Company (hereinafter called "appellant" or "Campbell") has appealed from an order of the State Real Estate Commission (hereinafter called "commission") dated September 14, 1965, revoking appellant's license to practice as a real estate broker. Pursuant to a citation issued by the commission to Campbell and to James E. Scott, a salesman employed by Campbell, upon the complaint of Mary Malpede, a prospective seller of realty, a hearing was held in Pittsburgh, Pa., on February 18, 1965. At the hearing, only Campbell appeared. The record reveals a subpoena had been issued for the appearance of Scott and a certified letter had been sent to him addressed to the Lincoln Realty Company enclosing the citation and notice of hearing, but there is no evidence that there was any service made on Scott or that he received notice of the hearing, the certified letter having been returned unopened.

Scott's license as a salesman was originally issued on January 21, 1960, expired on February 28, 1964, and was not renewed as of March 1, 1964. Campbell introduced into evidence a copy of a letter signed by Campbell dated November 23, 1963, addressed to the commission, Box 911, Harrisburg, Pa., which read, in part: "I am surrendering the enclosed Real Estate License and renewal certificate for James E. Scott, Agent of this office". The secretary to the commission testified that its records did not show that the Scott license was surrendered, a point disputed by appellant on the basis of his letter.

The commission's findings of fact, which refer to Campbell as respondent, James E. Scott as respondent-salesman and to Mary Malpede as complainant-seller, are as follows:

"1. Respondent, Mack W. Campbell, is a duly licensed real estate broker, t/a Lincoln Realty Company, holding license #18078, issued June 16, 1959, and was currently renewed at the time of the instant real estate transaction.

"2. Respondent-salesman, James E. Scott, was a duly licensed real estate salesman in the employ of Mack W. Campbell at the time of the instant real estate transaction, holding license #37324, issued January 21, 1960.

"3. That on or about April 4, 1960, respondent-salesman had complainant-seller sign an agreement for the sale of her property located at 8318 Meadow St., Pittsburgh, Pennsylvania.

"4. That although said agreement of sale recited that a $500 deposit had been received, receipt of which was acknowledged in the agreement, respondent had, in fact, only received $50 of the $500 deposit.

"5. Despite the fact that respondent-salesman knew that he had only turned over $50 of the required deposit to the broker, respondent-salesman informed complainant that the $500 deposit had been received by him and turned over to the broker.

"6. Respondent failed to review or supervise the preparation of the agreement of sale prior to its submission to complainant-seller for her approval.

"7. Although respondent had actual knowledge that his salesman had only turned over $50 to him, he failed to notify the complainant of this fact, nor did he make any effort to correct the agreement of sale.

"8. Respondent failed to properly supervise or review the conduct of his salesman in the instant transaction.

"9. Although the buyers had informed respondent's office of their decision not to complete the transaction, complainant was never informed of this fact until she, herself, contacted the buyers, directly, sometime in September of 1960.

"10. Despite the fact that complainant requested only $250 pursuant to her agreement with the broker, as her share of the liquidated damages, respondent failed to turn over any moneys to her.

"11. In order to obtain complainant's share of the liquidated damages, complainant was required to institute civil suit.

"12. Despite the fact that complainant received a judgment in the civil suit against respondent and his salesman in the amount of $250, plus interest, on or about October 4, 1962, respondent as of the date of the hearing, had failed to pay complainant any part of said judgment.

"13. Although $50 was, in fact, collected by respondent as part deposit in the instant transaction, respondent, without complainant's approval, credited the purchasers with the $50 in connection with certain charges they had incurred in connection with the sale of their property, instead of holding same for the benefit of complainant.

"14. Respondent is failing to maintain an escrow account and related records.

"15. Respondent is commingling escrow funds with non-escrow funds.

"16. Respondent is issuing personal checks from his alleged escrow account".

The conclusions of law by the commission relating to the Real Estate Brokers License Act of May 1, 1929, P. L. 1216, as amended, 63 PS §440 are as follows:

"1. The findings of fact set forth in findings of fact 2 through 9, inclusive, constitute a violation of Subsection (3) of Section 10 (a) of the Act of May 1, 1929,

P.L. 1216, as amended, 63 P.S. 440 which provides:

" '(3) Of a continued or flagrant course of misrepresentation, or making of false promises through agents or salesmen.'

"2. The findings of fact set forth in findings of fact 3 through 13, inclusive, constitute a violation of Subsection (5) of Section 10(a) of the Act of May 1, 1929, P.L. 1216, as amended, 63 P.S. 440 which provides:

" '(5) Of any failure to account for, or to pay over, moneys belonging to others, which has come into his, her, or its possession arising out of a real estate transaction.'

"3. The findings of fact set forth in findings of fact 4, 6, 7, 8, 12, 13, 14 and 15 constitute separate and independent violations of Subsection (7) of Section 10(a) of the Act of May 1, 1929, P.L. 1216, as amended, 63 P.S. 440, which provides:

" '(7) Of any act or conduct in connection with a real estate transaction which demonstrates incompetency, bad faith, or dishonesty.'

"4. The findings of fact set forth in findings of fact 10 through 13, inclusive, constitute a violation of Subsection (11)(i) of Section 10(a) of the Act of May 1, 1929, P.L. 1216, as amended, 63 P.S. 440, which provides:

" '(11)(i) All deposits or other moneys accepted by every person, copartnership, corporation or association, holding a real estate broker's license under the provisions of this act, must be retained by such real estate broker pending consummation or termination of the transaction involved, and shall be accounted for in the full amount thereof at the time of the consummation or termination.'

"5. The findings of fact set forth in findings of fact 15 constitutes a violation of Subsection (11)(iii) of Section 10(a) of the Act of May 1, 1929, P.L. 1216, as amended, 63 P.S. 440, which provides:

" '(11) (iii) A real estate broker shall not commingle the money or other property of his principal with his own.'

"6. The findings of fact set forth in findings of fact 14 constitutes a violation of Subsection (11) (v) of Section 10 (a) of the Act of May 1, 1929, P.L. 1216, as amended, 63 P.S. 440, which provides:

" '(11) (v) Every real estate broker shall keep records of all funds deposited therein, which records shall indicate clearly the date and from whom he received money, the date deposited, the dates of withdrawals, and other pertinent information concerning the transaction, and shall show clearly for whose account the money is deposited and to whom the money belongs. All such records and funds shall be subject to inspection by the commission. Such separate custodial or trust fund account shall designate the real estate broker, as trustee, and such account must provide for withdrawal of funds without previous notice' ".

Upon taking the appeal, a supersedeas was granted by this court on November 17, 1965. In the appeal petition, there are no specific exceptions but general averments that the findings of fact of the commission are not supported by the evidence adduced at the hearing, that the findings did not justify the conclusions of law and that, therefore, the commission, in revoking Campbell's license, was "capricious, arbitrary, unjustified, extreme and not warranted by the circumstances".

The record discloses that Campbell and Scott contacted Mrs. Malpede, after she placed a "For Sale" sign on a house, owned by her and her husband, Peter Malpede, an invalid, to obtain her permission to bring a prospective purchaser to the premises. Thereafter, Scott brought a Reverend Lewis and his wife to the property who expressed interest in purchasing. Sub-

sequently, a sales agreement dated April 7, 1960, was executed by Peter and Mary Malpede and the Lewises. The agreement, in part, set forth the manner of payment: "Five Hundred ($500.00) Dollars Hand Money, receipt of which is hereby acknowledged". It provided in the event of default by the buyers, ". . . all monies paid on account shall be divided equally between the seller[s] and the broker. . . ." Mrs. Malpede testified that Scott brought the agreement to her and her husband for their signatures. The crux of the testimony by Mrs. Malpede leading to the complaint is quoted:

"Scott said, 'I took them [the prospective purchasers] to the bank and they drew out $500 to put hand money down.' I signed the agreement".

In fact, only $50 had been received from the Lewises. Mrs. Malpede then related that she had several telephone conversations with Scott inquiring as to the closing of the transaction, that in the month of June 1960, Scott called and asked if the hand money could be given back to the Lewises because the Lewises couldn't find a buyer for their house, that Scott indicated the money was being held in escrow and that Scott didn't inform her until September 1960 that the Lewises were not going through with the transaction.

The transcript does not pinpoint the time when Campbell was aware that only $50 had been received as a deposit or when the Malpedes had knowledge that the deposit was $50, not $500.

An investigator for the Commonwealth was called to describe the inspection that he made of the books and records at the Lincoln Realty Company when he was investigating this matter. There were two checkbooks examined.

Despite the general attack on the recited findings and conclusions, a review of all of the evidence is not necessary to dispose of this case. Appellant does not actually dispute the truth of the findings, but rather

attempts to provide explanations which change the inferences to be drawn and to present reasons for the conclusions being inapplicable to the findings.

Certain of appellant's arguments are indeed extraordinary. In the second conclusion of law, which relates to appellant's failure to account for and pay over moneys belonging to others, the position of Campbell is that he received only $50, whereas the demand of the sellers of the property was $250, one half of the hand money as reflected in the agreement, and thus he could only be charged with accounting for $50 and not the sum set forth in the agreement. Not having received the deposit in full, he waited until a judgment for $250 was rendered against him by a court in Allegheny County and the commission rendered its decision against him and then paid and satisfied the judgment. His delay in paying the judgment is certainly inexcusable.

As to conclusion number 4, which requires an accounting of funds when a transaction is terminated, appellant argues that because the deposit of $50 was used by appellant to pay fees of the buyers in a different real estate matter from that which concerned the Malpedes, he was, therefore, accounting for the money, whether it was rightfully or wrongfully used. Respectful attention need not be given this rationalization.

In conclusion number 5, relating to the commingling of funds, appellant's view is also somewhat curious. He feels that because the two bank accounts he kept, and in particular the one which he referred to as an escrow fund, always had a surplus, no one could be harmed or damaged by this method of operation.

The requirement in conclusion number 6 that records be kept of all funds deposited with a broker with pertinent information concerning transactions, draws an objection because the investigator looked only at

appellant's checkbooks. The evidence discloses that, in fact, there were really no records except these two checkbooks and, although Campbell referred to the one as an escrow account and the other as an expense account, neither was designated as such.

A reading of the findings of fact, which are amply supported by the evidence, would sustain the third conclusion holding the Real Estate Brokers License Act was violated by acts or conduct in connection with a real estate transaction which demonstrate incompetency, bad faith or dishonesty. Even if those unusual positions heretofore discussed were, in any sense, technically valid, the conduct of appellant, if not constituting a violation within the assigned conclusion, could be regarded as readily demonstrating incompetency, bad faith or dishonesty in violation of the statute.

The only contention which does appear to be worthy of consideration is the objection to conclusion number 1, which asserts that appellant violated the Real Estate Brokers License Act by a "continued or flagrant course of misrepresentation or making of false promises through agents or salesmen". In this regard it should be observed that section 14 of the Act of May 1, 1929, P. L. 1216, as amended, 63 PS §444, provides:

"No violation of any of the provisions of this act on the part of any real estate salesman, or other employe of any licensed real estate broker, shall be ground for the revocation of the license of the employer of such salesman or employe, unless it shall appear upon the hearing had that such employer had guilty knowledge of such violation. A course of dealing shown to have been followed by such employe shall constitute prima facie evidence of such knowledge upon the part of his employer".

Scott was a salesman for approximately three months at the time he engaged in the transaction with the Malpedes. Appellant, so far as the record discloses,

and accepting the representations made on his behalf by his attorney, had never been in any previous difficulty, and no complaint had been made against him subsequent to this one transaction taking place in 1960. The misrepresentation made to the sellers of the property was made by Scott, and there was no testimony at the hearing by the complainant relating to any statement made to her by Campbell. Apart from the original misrepresentation, the course of dealing shown was in the testimony by Mrs. Malpede that she called Scott on the phone several times after the execution of the agreement, and the nature of the conversations were such that she continued to be misled as to the amount of hand money. The transcript does not reveal when Mrs. Malpede first made her demand for the $250, except that sometime in June 1960, Scott had called her and wanted her to agree to giving back the money to the buyers, but Mrs. Malpede refused and wanted to know where the money was. The evidence is vague generally as to dates, and when Campbell became aware of the variance between the actual amount of the deposit and the amount set forth in the agreement, and particularly as to whether Campbell ever had knowledge of the declaration by Scott that Scott had gone to the bank with the buyers and had obtained the $500. Since this incident is the nub of the complaint made against appellant, and no testimony established that appellant had knowledge of this misrepresentation of his agent and somewhat hazy proof exists of a course of dealing by the employe, Scott, it would not be proper to find that there was sufficient evidence to justify the first conclusion of law: Burin Unemployment Compensation Case, Erie Resistor Corporation v. Unemployment Compensation Board of Review, 194 Pa. Superior Ct. 278 (1960). It must also be pointed out that the Real Estate Brokers License Act is penal in nature and must be strictly construed: Pennsylvania

State Real Estate Commission v. Keller, 401 Pa. 454 (1960). With substantial evidence lacking to sustain the first legal conclusion, the adjudication by the State commission cannot be completely affirmed.

Under the Administrative Agency Law of June 4, 1945, P. L. 1388, sec. 44, 71 PS §1710.44, "If the adjudication is not affirmed, the court may set aside or modify it, in whole, or in part, or may remand the proceeding to the agency. . . ."

We, therefore, enter the following

ORDER

And now, May 9, 1966, the order of the State Real Estate Commission dated September 14, 1965, revoking the license to practice as a real estate broker, no. 18078, issued to Mack W. Campbell, trading as Lincoln Realty Company, is hereby modified, and the said license issued to Mack W. Campbell, trading as Lincoln Realty Company, is suspended for a period of six months.